# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 23-732V
Filed: April 2, 2026

```
* * * * * * * * * * * * * *    *
ROSE PANZARELLA,              *
                              *
             Petitioner,      *
                              *
v.                            *
                              *
SECRETARY OF HEALTH           *
AND HUM. SERVICES,            *
                              *
             Respondent.      *
* * * * * * * * * * * * * *    *
```

*Paul R. Brazil, Esq.*, Muller Brazil, LLP, Dresher, PA, for petitioner.
*Mary E. Holmes, Esq.,* U.S. Dept. of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On May 17, 2023, Rose Panzarella ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program.[2] Petitioner alleged that she suffered immune thrombocytopenic purpura ("ITP") and subsequent anemia as a result of the influenza ("flu") vaccine she received on October 18, 2021. *See* Petition, ECF No. 1. Petitioner filed a Motion to Dismiss her claim, ECF No. 36, which the Court granted on July 8, 2025, ECF No. 36.

Petitioner seeks an award of final attorneys' fees and costs, requesting a total of **$24,232.38**, representing $19,245.30 in attorneys' fees and $4,987.08 in costs.[3] Motion for Fees, ECF No. 43. Respondent filed his response on November 20, 2025, asserting that petitioner did not have reasonable basis to file this claim at any time during this case. Response, ECF No. 44 at

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned finds that the identified material fits within this definition, such material will be redacted from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] Petitioner averred that she did not personally incur any costs in the prosecution of this matter. ECF No. 43 at 2.

7. Petitioner filed a reply on December 15, 2025. ECF No. 46.

After careful consideration, petitioner's Motion for Attorneys' Fees and Costs is **GRANTED in part** for the reasons set forth below.

## I.     Procedural History

As noted, petitioner filed her petition and medical records on May 17, 2023. ECF No. 1. Her case was assigned to the undersigned on September 27, 2023. ECF No. 10. Respondent filed his Rule 4(c) report on March 5, 2024. ECF No. 16. Pursuant to respondent's requests, petitioner filed updated medical records. ECF Nos. 18, 22, and 29.

On January 24, 2025, the Court ordered petitioner to file any and all proof which tended to satisfy the six-month severity requirement. Petitioner filed a status report on March 25, 2025, advising that she had no further evidence to file. She requested the opportunity to retain an expert to opine on whether her subsequent anemia was caused by or related to her vaccine-related ITP. ECF No. 33. Respondent filed a status report noting that he did not object to the filing of an expert report. ECF No 34. Petitioner was ordered to file an expert report by June 23, 2025.

In lieu of an expert report, petitioner filed a status report on June 23, 2025, advising that she had retained an expert but nevertheless had decided to dismiss her case. ECF No. 35. Petitioner promptly filed for the dismissal of her case on July 8, 2025. ECF No. 36. The Court issued its decision dismissing the case on July 8, 2026, ECF No. 38, and judgment was entered on July 10, 2025, ECF No. 40.

Petitioner filed the instant Motion for Attorneys' Fees and Costs on November 6, 2025. Respondent filed his response and petitioner replied.

This matter is now ripe for a decision on fees.

## II.     Factual Background

Petitioner was 74 years old when she received the subject flu vaccine on October 18, 2021. Pet. Ex. 6 at 26; Pet. Ex. 1 at 3-4. She had a past medical history of hypertension, hyperlipidemia, atherosclerosis, reflux, lumbar radiculopathy, lymphoma, and lymphadenopathy. Pet. Ex. 6 at 21, 24; Pet. Ex. 2 at 5.

Petitioner presented to her primary care physician eight days post-vaccination for body aches and bruising on her arms and legs. Pet. Ex. 2 at 20. She reported receipt of a COVID vaccine on June 7, 2021, and a flu vaccine on October 21, 2021, with bruising that started "days or weeks" after vaccination. *Id*. She was taking over the counter anti-inflammatories. The assessment was "diffuse purpura most probably related to the flu vaccine, COVID-19 vaccine, or the nonsteroidals." *Id.* Bloodwork performed showed critically low platelet count and low red blood cell count. *Id.* at 43 (platelet result of 7,000/mm$^3$, reference range 150,000-450,000). She was advised by her doctor to go to the ER. Pet. Ex. 2 at 21.

2

Once at the ER she reported one week of bruising and low platelet count. Pet. Ex. 3 at 6. Bruising was noted. Repeat blood work included critically low platelet count and she was admitted for ITP treatment. Pet. Ex. 3 at 167-168.

During her hematology consult, petitioner reported that she received the flu vaccine and within 48 hours experienced bruising. On examination, she had bruising and petechia on her legs. The assessment was ITP likely due to recent flu vaccine. Pet. Ex. 3 at 169. She was started on dexamethasone and IVIG. *Id*. at 170-173. Her platelets improved and ultimately stabilized by October 31, 2021, when she was discharged. She was prescribed a steroid taper. Pet. Ex. 3 at 174, 230.

At a hematology follow-up on November 4, 2021, petitioner was taking her steroid as prescribed and had no petechia, bruising, or pallor, with a normal platelet count of $136,000/\text{mm}^3$. Pet. Ex. 4 at 47, 49. She returned again on November 16, 2021, with no new issues and a platelet count of $105,000/\text{mm}^3$.

At her December 2021 visit with hematology, petitioner was two weeks post-completion of the steroid taper and exhibited no symptoms. Her platelet count was at $235,000/\text{mm}^3$. Pet. Ex. 4 at 41. No further treatment was ordered other than follow up blood work. *Id*.

Petitioner attended follow-up visits with her treating physicians for her various unrelated issues thereafter with normal platelet counts. *See generally* Pet. Exs. 8-10.

Petitioner's medical records show that she had normal platelet counts prior to her receipt of the flu vaccine despite her history of lymphoma. *See* Pet. Ex. 10. She suffered bruising and petechia within days of her receipt of a flu vaccine on October 21, 2021. Her platelet count dropped to critically low levels, Pet. Ex. 3 at 6, and she was hospitalized on October 27, 2021, for treatment of ITP likely from a flu vaccine, Pet. Ex. 3 at 173. Petitioner's ITP resolved within days of treatment and she was discharged home with routine follow-up and no further events. However, she did have blood work which showed low red blood cell counts, not low platelet counts, for some time after her ITP resolved. Pet. Ex. 4 at 7-11; Pet. Ex. 2 at 39, 43. Petitioner filed updated medical records in November of 2024. Those records showed no relapses of low platelet counts. *See* Pet. Ex. 10.

### III.    Legal Standard

**A. Good Faith**

"Good faith" is a subjective standard. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007). A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred. *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied. *See Riley v.*

*Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

Since good faith was not raised by respondent, it will not be addressed, and petitioner is afforded the presumption of good faith in the filing of her petition.

### B. Reasonable Basis

Reasonable basis, however, is an objective inquiry, irrespective of counsel's conduct or a looming statute of limitations, that evaluates the sufficiency of records available at the time a claim is filed. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017); *see Turpin v. Sec'y of Health & Hum. Servs.*, No. 99-564, 2005 WL 1026714 at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005). When determining if a reasonable basis exists, special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018). The Federal Circuit concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim." *Simmons*, 875 F.3d at 636. Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa*, 138 Fed. Cl. at 289.

Reasonable basis is satisfied when there is a mere scintilla of objective evidence, such as medical records or medical opinions, supporting a feasible claim before filing. *See Cottingham ex. rel. K.C. v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1346 (Fed. Cir. 2020); s*ee Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Hum. Servs.*, 101 Fed. Cl. 303, 303 (2011)); *Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 405 (2012). A recent attempt to clarify what quantifies a scintilla looked to the Fourth Circuit, which characterized "more than a mere scintilla of evidence" as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation." *Cottingham v. Sec'y of Health & Hum. Servs.,* 154 Fed. Cl. 790, 795 (2021) (quoting *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 765 (4th Cir. 2021)).

In discussing the reasonable basis requirement in *Cottingham*, the Federal Circuit stressed the prima facie petition requirements of § 11(c)(1) of the Act. Specifically, the petition must be accompanied by an affidavit and supporting documentation showing that the vaccinee:

(1) received a vaccine listed on the Vaccine Injury Table;
(2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;
(3) sustained (or had significantly aggravated) an injury set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;
(4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and

4

(5) has not previously collected an award or settlement of a civil action for damages for the same injury.

*Cottingham*, 971 F.3d at 1345-46.

Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." § 300aa-13(a)(1). However, absence of an express medical opinion of causation is not necessarily dispositive of whether a claim has a reasonable basis. Medical records may support causation even where the records provide only circumstantial evidence of causation. *James-Cornelius*, 984 F.3d at 1379-80. While absent or incomplete records do not strictly prohibit a finding of reasonable basis, an overwhelming lack of objective evidence will not support reasonable basis. *Chuisano*, 116 Fed. Cl. at 288; *see Simmons*, 875 F.3d at 634-36 (holding that reasonable basis was not satisfied where 1) petitioner's medical record lacked proof of vaccination and diagnosis and 2) petitioner disappeared for two years before filing a claim). The objective evidence in the record must also not be so contrary that a feasible claim is not possible. *Cottingham*, 154 Fed. Cl. at 795, citing *Randall v. Sec'y of Health & Hum. Servs.,* No. 18-448V, 2020 WL 7491210, at *12 (Fed. Cl. Spec. Mstr. Nov. 24, 2020) (finding no reasonable basis when petitioner alleged a SIRVA injury in his left arm though the medical records indicated that the vaccine was administered in petitioner's right arm). A claim may lose reasonable basis as it progresses if further evidence is unsupportive of petitioner's claim. *See R.K. v. Sec'y of Health & Hum. Servs.,* 760 F. App'x 1010, 1012 (Fed. Cir. 2019) (citing *Perreira v. Sec'y of Health & Hum. Servs.,* 33 F.3d 1375, 1376–77 (Fed. Cir. 1994)).

## IV.    Discussion

To establish a reasonable basis for attorneys' fees, the burden is lower than the preponderant evidence standard required to prove entitlement to compensation. *Cottingham*, 971 F.3d at 1345-46. Petitioner must provide more than a mere scintilla of evidence, defined as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation." *Cottingham*, 154 Fed. Cl. at 795 (quoting *Sedar*, 988 F.3d at 765). The Federal Circuit explained in *James-Cornelius* that affidavits or sworn statements may provide objective evidence supporting a claim in the Vaccine Program. *James-Cornelius*, 984 F.3d at 1380-81.

Respondent argues that "[t]here is no evidence in the record that petitioner suffered any sequela of her ITP for over six months." ECF No. 44 at 5. And because "reasonable basis required objective evidence of every element of a prima facie claim," petitioner is not entitled to an award of attorney's fees. *Id*. Specifically, respondent argues that "[w]hile the petition asserts that petitioner's July 28, 2022 low homoglobin level is a sequela of her ITP, this is speculative given her interim normal bloodwork and history of low red blood cell counts." *Id*. at 6.

Petitioner rebuts the foregoing citing to several facts supported by contemporaneous medical records which she claims provide objective evidence regarding causation and the severity requirement. First, petitioner's doctor diagnosed her with "ITP likely due to recent flu shot." ECF No. 46 at 3; Pet. Ex. 3 at 173. And "[o]n several occasions, petitioner had an abnormally low red blood cell count" including at least once in July 2022, more than six months post-vaccination. Pet. Ex. 4 at 11.

Under the current law, there is more than a mere scintilla of evidence that petitioner may have been injured by her flu vaccine. Petitioner experienced the onset of ITP shortly after her vaccination, with critically low platelet counts requiring hospitalization and treatment and continued low red blood cell counts thereafter. Whether petitioner would have been able to prove that the flu vaccine can cause ITP and/or low red blood cell counts (anemia), did so here, and in a medically appropriate time frame is not the standard required for attorney's fees and costs. Whether petitioner believed her injuries to be vaccine related is. With regard to the severity requirement, while petitioner's platelet counts returned to normal with treatment, her red blood cell count was notably low more than six months post-vaccination. She reasonably sought to determine whether this was related to her ITP and/or the flu vaccine. ECF No. 32.

Indeed, though of course not dispositive, respondent did not note an objection to reasonable basis at any other time during the course of this matter. Even after raising concerns about petitioner's ability to satisfy the six-month severity requirement, respondent did "not object to petitioner's request to file expert opinion." ECF No. 34.

Based on the contemporaneous medical records, I find that petitioner provided sufficient evidence to support her claim for purposes of satisfying the reasonable basis requirements.

## V.     Attorneys' Fees and Costs Calculation

### A. Reasonable Hourly Rate

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorney's fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id.* This is known as the *Davis County* exception. *See Hall v. Sec'y of Health & Hum. Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[4]

---

[4] The OSM Attorneys' Forum Hourly Rate Fee Schedules are available on the U.S. Court of Federal Claims website at https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules.The hourly rates contained within the schedules are updated from the decision in *McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner requests an hourly rate of $400 for work Mr. Brazil performed in 2022; $425 for 2023; $450 for 2024; and $475 for 2025. He also requests various rates for the several paralegals who worked on this matter. *See* ECF No. 43 at 5-16. These rates have been awarded previously and I find them reasonable here. *See, e.g., Morgan v. Sec'y of Health & Hum. Servs.*, No. 16-269V, 2025 WL 1453174, at *1 (Fed. Cl. Spec. Mstr. Apr. 14, 2025).

### B. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Hum. Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Hum. Servs.*, No. 08–756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Hum. Servs.*, No 14–1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728–29 (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

Upon review of the billing records, the majority of entries adequately describe the work performed, and the time billed corresponds with that work. However, there are several entries which appear to be excessive, double billed, or block billed. For instance, on May 17, 2023, there are two entries for "Review notice of designation" and two more for "Review order directing appearance." Additionally, on that day, an attorney's rate is billed for six separate entries totaling 0.6 hours for tasks that are both negligible, like reviewing a notice of designation or an order directing appearance, or are so ubiquitous in the Program that they should require no measurable time spent by a seasoned vaccine attorney like Mr. Brazil, like reviewing the PAR order or the notice of assignment. For another example, Mr. Brazil billed 0.1 hours at an attorney rate to "Review order re statutory period" while a paralegal billed 0.1 hours to file a memo regarding that same order. The 240 Day Order is a boilerplate order issued in almost every single case before the Program which informs petitioners that they may cease proceedings in the Program after 240 days.

The court in *Broekelschen* noted that high hourly rates for experienced vaccine attorneys "comes with a caveat. When attorneys are paid relatively high hourly rates because of their skills and experiences, the attorneys are expected to be efficient. Professionals who charge by the hour should not both charge a relatively high hourly rate and charge a relatively high number of hours." 102 Fed. Cl. at 731. An experienced vaccine attorney such as Mr. Brazil should not attempt to bill for frivolous activities or engage in block billing as he does in his March 18, 2025, entry.

Mr. Brazil and the Muller Brazil firm have been warned previously on several occasions about such billing practices. *Hunt v. Sec'y of Health & Hum. Servs.*, No. 20-1455V, 2025 WL 2048787 (Fed. Cl. Spec. Mstr. June 27, 2025); *Rogers v. Sec'y of Health & Hum. Servs.*, No. 18-190V, 2023 WL 2748431 (Fed. Cl. Spec. Mstr. Apr. 3, 2023); *Mohler v. Sec'y of Health & Hum. Servs.*, No. 16-1404V, 2018 WL 3989515 (Fed. Cl. Spec. Mstr. July 2, 2018). And they were warned in a recent decision reducing fees by 10% that if these practices continued, "the next reduction will be a higher percentage." *K.K. v. Sec'y of Health & Hum. Servs.*, No. 17-621V, 2026 WL 880578, at *3 n.6 (Fed. Cl. Mar. 5, 2026). Therefore, a 15% reduction of the overall fees requested is warranted, resulting in a **reduction of $2,886.79.**[5]

Petitioner is therefore awarded final attorneys' fees of **$16,358.51.**

## C. Reasonable Costs

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner affirmed that she did not incur any personal costs associated with this claim. ECF No. 43 at 2. Petitioner requests a total of $4,987.08 in costs incurred by counsel. *Id*. Some of the costs are associated with medical records requests and for the filing fee. These costs are routinely awarded in vaccine cases and are supported by the receipts filed. ECF No. 43 at 18-25. Thus, they are awarded in full.

The remaining costs are associated with petitioner's expert, Dr. Ghose, who reviewed petitioner's medical records before petitioner moved to dismiss her case. ECF No. 43 at 26. Dr. Ghose requests compensation for five hours reviewing medical records at a rate of $650 per hour. *Id*. Several recent decisions from other special masters have declined to make findings on whether Dr. Ghose's request rate is reasonable. *See, e.g., Bonilla-Edgington v. Sec'y of Health & Hum. Servs.*, No. 20-194V, 2025 WL 3688934, at *3 (Fed. Cl. Spec. Mstr. Aug. 18, 2025) (refusing to make a finding whether Dr. Ghose's rate was reasonable, but noting that other hematologists in the Program have been awarded less); *Schmitke v. Sec'y of Health & Hum. Servs.*, No. 21-2337V, 2025 WL 1555020, at *4 (Fed. Cl. Spec. Mstr. May 7, 2025) (finding that Dr. Ghose's requested rate is high for the Program, but finding the total amount requested for work performed to be reasonable).

Here, petitioner has provided no supporting explanation or documentation for why Dr. Ghose merits such a high hourly rate. Other Special Masters have noted that extremely experienced hematologists in the Program have received significantly lower rates than Dr. Ghose requests here. *See Bryce v. Sec'y of Health & Hum. Servs.*, No. 17-1832V, 2023 WL 5666165, at *7 (Fed. Cl.

---

[5] $19,245.30 * 0.85 = $16,358.51

Spec. Mstr. July 18, 2023) (awarding a $400 hourly rate to a hematologist with over 30 years experience); *Ferguson v. Sec'y of Health & Hum. Servs.*, No. 17-1737V, 2022 WL 1467655, at *3 (Fed. Cl. Spec. Mstr. Apr. 12, 2022) (awarding a $500 hourly rate to a pediatric hematologist and oncologist with over 10 years' experience).

Nevertheless, though the undersigned makes no finding regarding the reasonableness of Dr. Ghose's hourly rate, the overall amount requested is reasonable under the circumstances. In the future, counsel is cautioned that expert rates should be substantiated with supporting evidence of merit.

Petitioner is therefore awarded total costs of **$4,987.08.**

## VI.     Conclusion

Based on the foregoing, petitioner's Motion for Attorneys' Fees and Costs is **GRANTED in part.** Petitioner is hereby awarded a total of **$21,345.59,** representing **$16,358.51** in attorneys' fees and **$4,987.08** in costs, to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement.

The Clerk of Court is directed to enter judgment in accordance with this decision.[6]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.